IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID and KELLY ADAIR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-1026-CV-W-HFS |
| | ) | |
| FEDERAL NATIONAL MORTGAGE and INDYMAC BANK, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the court in this diversity case is the second motion of defendant, Indymac Bank "IMB," for summary judgment (doc. 45).[1] Also, before the court is the motion of pro se plaintiffs to dismiss the Postponement Agreement (doc. 46), and their motion to stop the eviction proceeding (doc. 50).

In 1995, plaintiffs purchased property located at 5125 East 62nd Street, Kansas City, Missouri. In April of 2003, plaintiffs refinanced their loan with IMB which was secured by a promissory note executed by plaintiffs in the amount of $94,000, and a Deed of Trust in favor of

---

[1]In a prior ruling, summary judgment was granted to defendant, Federal National Mortgage "FNM", on the sole claim for quiet title. Thus, FNM was dismissed from this action. The prior ruling also rejected, as a matter of law, what was referred to as "the new loan theory" but denied summary judgment "on the issue of premature foreclosure." (Doc. 37, page 10).

IMB. In early 2006, the loan became delinquent and IMB commenced a foreclosure proceeding. The foreclosure sale date was March 31, 2006.

Plaintiffs engaged the services of a company called We Save Homes who initiated negotiations with IMB in an attempt to avoid foreclosure proceedings. By written agreement dated March 30, 2006, referenced as "the Agreement," IMB agreed to postpone the March 31st foreclosure date, until April 28, 2006. Also on March 30th, plaintiffs tendered a money order to IMB in the amount of $3,000. Defendants claim, and plaintiffs admit that this payment was made in exchange for the postponement.

At some point plaintiffs requested a loan modification, and Olivia Prawita, a loan specialist with IMB, advised plaintiffs that additional financial information would be required. A loan modification was not executed, and a foreclosure sale took place. Defendant IMB purchased the property, and then sold it to defendant FNM. FNM obtained a judgment against plaintiffs for possession on November 21, 2006. (Doc. 44, Exh. D-11).

In the prior motion for summary judgment, IMB sought the dismissal of plaintiffs' claims for breach of contract; fraudulent misrepresentation; negligent misrepresentation; violation of the Merchandising Practices Act; promissory estoppel; and plaintiffs' claim to set aside foreclosure. After a review of the pleadings submitted by the parties, including affidavits and exhibits, as well as their respective arguments, summary judgment was granted in part and denied in part. The claims for breach of contract, negligent misrepresentation, and violation of the Merchandising Practices Act were dismissed.[2]

In the remaining claim for fraudulent misrepresentation, plaintiffs contended that

---

[2]Summary judgment was also granted on plaintiffs' claim of quiet title against defendant, Federal National Mortgage "FNM;" thereby dismissing it from this action.

notwithstanding the Agreement to postpone foreclosure until April 28th, IMB commenced foreclosure proceedings prior to that time. Support for this contention was found in the wording of the complaint filed by defendant FNM in an unlawful detainer action against plaintiffs, as well as a letter to plaintiffs seeking their surrender of the property; both of these documents stated a foreclosure date of April 7, 2006. Because IMB did not respond to this evidence, I found that plaintiffs set forth sufficient facts showing a genuine issue for trial.

Now, in support of the instant motion for summary judgment, IMB has submitted the affidavit of counsel for FNM in the underlying unlawful detainer action who avers that the April 7, 2006, date noted on the complaint and letter was stated in error, and that the actual date of foreclosure was April 28, 2006. (Supporting Suggestions: Exh. D-9, Affidavit of Kurt Lewis). IMB has also submitted a copy of the judgment in the underlying detainer action ruled in favor of FNM; also indicating that the date of foreclosure occurred on April 28, 2006. (Id: Exh. D-10).[3]

In opposition, plaintiffs repeat their claim that IMB agreed to a loan modification through their communications with Ms. Prawita. Conversely, Ms. Prawita has averred that she had no authority to approve a loan modification, and that she advised plaintiffs of the documents needed, but plaintiffs failed to provide the financial information. (Plaintiffs' Opposition: Defense Exh. D-3, Affidavit of Olivia Prawita). Plaintiffs contend that Ms. Prawita's averments are less than credible because she incorrectly stated that the $3,000 payment was noted in the Agreement. Although plaintiffs correctly state that this sum was not noted in the Agreement, a review of the Prawita Affidavit merely indicates that plaintiffs tendered to IMB the amount of $3,000 as part of the

---

[3]Further support is found in the Trustee's Deed reflecting IMB's purchase of the property at a foreclosure sale indicates that on April 28, 2006, the Successor Trustee sold the property after announcing the postponement of the sale from the originally scheduled date of March 31, 2006. (Supporting Suggestions: Exh. D-4). The April 28th date is also noted in the Special Warranty Deed which reflects the sale of the property from IMB to FNM. (Id: Exh. D-5).

agreement to extend the foreclosure date. In fact, plaintiffs admit that We Save Homes, the agency engaged by plaintiffs to assist with the pending foreclosure, entered into an agreement with IMB that the foreclosure date of March 31, 2006, would be extended until April 28, 2006, in exchange for $3,000 from plaintiffs. (Petition: ¶ 9). Therefore, even though not expressly noted in the Agreement, it remains undisputed that plaintiffs agreed to tender the sum of $3,000 to IMB in exchange for postponement of foreclosure. Further, as previously decided, plaintiffs' conclusory allegations regarding a loan modification, without more, is insufficient to defeat IMB's motion for summary judgment on the claim of fraudulent misrepresentation. Because plaintiffs now fail to present a submissible claim on a theory of premature foreclosure, any claim to set aside the foreclosure also fails. Consequently, summary judgment will be granted on plaintiffs' remaining claims of fraudulent misrepresentation, premature foreclosure, and set aside foreclosure.[4]

In their motion to stop the eviction, plaintiffs have provided a number of communications with counsel for IMB apparently in an effort to negotiate a settlement. According to these documents, which consist solely of letters written by plaintiff, David Adair, to defense counsel, plaintiffs offered IMB $50,000 to settle the matter, with an agreement to have the foreclosure removed from their credit report. Despite the repeated offers, plaintiffs have provided no evidence of acceptance or counter-offers from IMB. Instead, plaintiffs have filed the instant motion seeking intervention by this court to stop the eviction proceedings.

---

[4]Accordingly, plaintiffs' subsequent motions to dismiss the postponement agreement are likewise denied. Plaintiffs seek to dismiss this agreement due to a finding by an Administrative Hearing Officer that the notary on the Agreement failed to properly complete the notary information on the document making it impossible to determine whose signatures were witnessed. (Doc. 47). While this may bear some relevance as to the level of care displayed by the notary, such information does not provide support for plaintiffs' claims; especially in view of the fact that all of the documentation submitted by plaintiffs demonstrate their voluntary tender of the $3,000 with the hope of forestalling foreclosure proceedings in an effort to maintain ownership of the property.

The relief sought by plaintiffs is unavailable in this forum. Plaintiffs seek relief regarding a party, FNM, no longer a party in this action, and the November 21, 2006, judgment in the underlying detainer action directed that, upon request of FNM, a writ of assistance shall be issued to the Sheriff of Clay County directing the Sheriff to place FNM in possession of the property. (Supporting Suggestions: Exh. D-11, pg. 2). Said writ was recently issued on June 19, 2008, and its issuance finds authority in the state court judgment.

Moreover, the *Rooker-Feldman* doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000).[5] Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. Id. The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Id. Thus, plaintiffs' motion will be denied.

Accordingly, it is hereby

ORDERED that IMB's second motion for summary judgment (ECF doc. 45) is GRANTED. The clerk is directed to enter judgment in favor of IMB. It is further

ORDERED that plaintiffs' motion to dismiss postponement agreement (ECF doc. 46) is DENIED. It is further

---

[5] A corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. Lemonds, at 492. A general federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." Id; citing, Pennzoil Co. V. Texaco, Inc., 481 U.S. 1, 25 (1987)(Marshall, J., concurring). "[W]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." Id, at 493.

ORDERED that plaintiffs' motion to stop eviction proceedings (ECF doc. 50) is DENIED. It is further

ORDERED that the clerk of the court mail a copy of this order by regular mail, and certified mail, return receipt to plaintiffs at:

5125 N.E. 62nd Street

Kansas City, Mo. 64119

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September  5 , 2008

Kansas City, Missouri